Anthony I. CROWLEY et al.

v.

Roger B. DUBUC and Pauline Dubuc.

Supreme Judicial Court of Maine.

Argued Jan. 19, 1981.

Decided May 13, 1981.

Hardy & Wolf, P.A., Thomas R. Downing (orally), William P. Hardy, Lewiston, for appellants.

Roger B. Dubuc, pro se (orally).

Before McKUSICK, C.J., WERNICK, GODFREY, NICHOLS and CARTER, JJ., and DUFRESNE, A.R.J.

PER CURIAM.

The defendants, Roger and Pauline Dubuc, husband and wife, appeal from a judgment of the Superior Court, Androscoggin County, awarding the plaintiffs, Anthony and Anna Crowley, in their action for deceit based on misrepresentations made by Mr. Dubuc in the course of a real estate transaction between the parties, damages in the aggregate amount of eight thousand four hundred and thirty-four ($8,434.00) dollars, together with costs and interest. The Court's order specifically allocated five thousand nine hundred and thirty-four ($5,934.00) dollars as compensatory damages for the deceit, which included four hundred ($400.00) dollars as compensation for injury to personal property directly flowing from the misconduct. The balance of the monetary award in the amount of two thousand five hundred ($2,500.00) dollars was stated to be punitive damages for the false representations made by Mr. Dubuc in a wanton, wilful and deliberate manner. We affirm the judgment.

### Facts

In the spring of 1975, the defendants were attempting to sell their Golder Road *property in Lewiston*, title to which was in Mrs. Dubuc's name. The cellar walls of the structure had been severely damaged during the preceding winter, while the house was occupied by a tenant, and the Dubucs spent a considerable part of the spring repairing the damage and sprucing up the premises for the purpose of putting the property on the market. During late April or early May, the plaintiffs noticed the "For Sale" sign on Mrs. Dubuc's property and, after obtaining the keys from a neighbor, went through the house. Finding it to their liking, they returned for several more visits, and finally, at a meeting at the Dubucs' new home on May 22, 1975, they agreed to purchase the property from the defendants for the price of twenty-five thousand ($25,000.00) dollars. The closing of the sale took place on June 4, 1975, the plaintiffs taking possession on that same day.

During the following winter, in January, 1976, Mr. Crowley discovered that there was water in the workshop portion of the basement of his new home, which he was using as a storeroom. He also noticed that there were horizontal cracks in several of the workshop walls. A closer examination of those cracks revealed that they had previously been filled with patching cement and painted over. Mr. Crowley thereafter learned that the foundation walls would need extensive repair, and perhaps, even removal and replacement.

Two sharply contrasting versions of the events leading up to the sale evolved at trial. Mr. Crowley, who admitted that he had independently gained some expertise in foundation work since his dealings with Mr. Dubuc, nonetheless asserted that he had never noticed any crack or other visible defect in the foundation in the cellar or the workshop prior to January, 1976. He testified that on one of the visits he made to the property before agreeing to buy it, Mr. Dubuc had assured him that the foundations of the cellar and the workshop were in good condition.

Mr. Dubuc admitted that the cracks resulted from the water damage to the foundation that occurred during the winter preceding the sale of the home, and also that he had patched those cracks himself. How-

ever, he testified that, at the time of Mr. Crowley's first visit to the house, the cracks were plainly visible. According to Mr. Dubuc, when Mr. Crowley subsequently returned for another examination of the house, he came through the workshop and watched Mr. Dubuc as he was patching and painting the foundation surface.

### Findings

The Superior Court Justice, sitting as trier of the facts in the jury-waived trial (see M.R.Civ.P. 52(a)), found that Mr. Dubuc did assure Mr. Crowley that the foundation was in good condition, as testified to by Mr. Crowley. The Justice then determined that those assurances were false, and that Mr. Dubuc made them knowing that they were false and with the intention that the plaintiffs act in reliance upon them. The Justice then found that the plaintiffs had indeed relied upon Mr. Dubuc's misrepresentation to their detriment and that they did not know and could not have learned by the exercise of reasonable care that it was false. The Justice also found that Mr. Dubuc had deliberately and wilfully concealed the defects in the foundation walls so that prospective purchasers of the house would not notice them. His award of damages, as previously indicated, followed.

### Standard of Review

■ The defendants contend that the trial Justice's decision was based on sympathy and not on facts. They assert that the plaintiffs did not demonstrate by a preponderance of the evidence that the damages claimed were caused by any wrongful acts of the defendants. We understand the defendants by their argument to be challenging the trial Justice's factual findings, including his ultimate determinations on the issues of liability and damages. In order to demonstrate that the Justice made the wrong factual findings, however, the defendants must show that those findings were clearly erroneous. M.R.Civ.P. 52(a). A trial court's factual determinations are not clearly erroneous if they are supported by credible evidence in the record. *Leigh-*

*ton v. Leighton*, Me., 329 A.2d 164, 166 (1974); *LaPointe Brothers, Inc. v. Farrell*, Me., 363 A.2d 225, 228 (1976); *O'Halloran v. Oechslie*, Me., 402 A.2d 67, 69 (1979). We conclude that there was sufficient competent evidence on the record in the instant case to support the presiding Justice's determination on liability and damages.

■ From the testimony of the plaintiffs, Anthony and Anna Crowley, the presiding Justice could have found the following facts: the plaintiffs were never told about the cracks in the foundation of the house they were purchasing; they first discovered the cracks in January, 1976, when they noticed that water had leaked into the workshop area of their cellar; an attempt had been made to conceal the cracks by filling them with patching material and by painting over them; Mr. Dubuc had told Mr. Crowley that the foundation was in good condition; in fact the foundation was not in good condition, but instead, needed extensive repairs. From Mr. Dubuc's own testimony, the Justice could furthermore have found that Mr. Dubuc himself had patched the cracks, and he could reasonably have inferred from the totality of the evidence presented to him that Mr. Dubuc had done so before the Crowleys or other prospective purchasers viewed the premises, in an effort to mislead them into thinking that the badly damaged foundation walls were sound. It is true that the parties to the case presented the trial Justice with two sharply contrasting accounts of the events preceding the sale of the property, and that the Justice could have reached a different determination if he had accepted the defendants' version rather than the plaintiffs'. Inasmuch as his findings were supported in the record, however, they are conclusive upon this Court, even though there is evidence in the record that could have supported contrary determinations. *See Benner v. Sherman*, Me., 371 A.2d 420, 421 (1977).

■ The Dubucs specifically contend that it was error as a matter of law for the presiding Justice to find as a matter of fact that the Crowleys could not have as-

certained by the exercise of reasonable care that Mr. Dubuc's representation was false.[1] They base this contention on the allegedly obvious conclusion to be reached from the photographs introduced in evidence. True, these photographs do depict large cracks in the foundation. But they were taken long after January, 1976, when these cracks were said to have appeared. What they looked like in the spring of 1975 when the negotiations were taking place was for the trier of facts to decide. The persuasiveness of exhibits is a factual issue for resolution by the trial justice, whose determination thereon, like his assessment of testimonial evidence, must be upheld unless clearly erroneous. *Leighton v. Leighton, supra,* at 167. *See also Rhoda v. Annis,* 75 Me. 17, 27, 46 Am.Rep. 354 (1883).

### Principal and Agent

 The parties stipulated at trial, and the evidence is consistent therewith, that Mr. Dubuc was acting as Mrs. Dubuc's agent during the course of the negotiations for, and ultimate consummation of, the sale of her property to the Crowleys. Even though she testified that she was aware of the repairs to the structure's foundations, there was no evidence whatsoever which indicated that Mrs. Dubuc personally had any knowledge of her husband's misrepresentations to the Crowleys, either before or after the misrepresentations were made. Thus, her liability in the case at bar is based solely on her husband's misconduct. The trial Justice correctly held Mrs. Dubuc accountable to the Crowleys in compensatory damages, since, under Maine law, a principal *is* liable for the fraudulent misrepresentations made by his agent within the scope of the agent's authority, whether or not the principal knows or is unaware of his agent's misconduct. *Leavitt v. Seaney,* 113 Me. 119, 122, 93 A. 46, 47–48 (1915); *Restatement (Second) of Agency* § 257 (1958).[2]

### Joint Liability

The wife as principal may, as was done in the instant case, be held jointly liable with her husband as agent to respond in compensatory damages for the injury incurred by reason of the fraudulent misrepresentations made by the husband in the sale of his wife's property, even though the wife was innocent of any personal participation in the fraud. *See Crawford v. Nastos,* 182 Cal.App.2d 659, 6 Cal.Rptr. 425, 431 (1960). Rule 20, M.R.Civ.P. *See also Maine Civil Practice,* Field, McKusick, Wroth, Vol. 1, § 20.2

We have examined the defendants' other claims of error and find them to be without merit.

The entry will be:

Judgment for the plaintiffs affirmed.

All concurring.

---

1. We discuss the Dubucs' argument in terms of the principles of law applied by the presiding Justice. Nothing herein contained, however, should be read as departing from our holding in *Letellier v. Small,* Me., 400 A.2d 371, 375–76 (1979).

2. Accord: *Nyer v. Carter,* Me., 367 A.2d 1375, 1378 (1977); *Harlow v. Perry,* 114 Me. 460, 462–463, 96 A. 775 (1916); *Rhoda v. Annis,* 75 Me. 17, 46 Am.Rep. 354 (1883).