FEDERAL DEPOSIT INSURANCE CORP.

v.

Samuel P. PROIA.

Supreme Judicial Court of Maine.

Submitted on Briefs June 21, 1995.

Decided Sept. 13, 1995.

Bradley M. Lown, Boynton, Waldron, Doleac, Woodman & Scott, P.A., Portsmouth, for plaintiff.

Ervin D. Snyder, Snyder & Jumper, Wiscasset, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

Samuel P. Proia appeals from the entry of a judgment in the Superior Court (Lincoln County, *Crowley, J.*) in favor of the Federal Deposit Insurance Corporation [hereinafter FDIC] after a non-jury trial on its complaint to collect a debt and to set aside a fraudulent conveyance.[1] Proia challenges the court's jurisdiction over the Westport Island Trust [hereinafter Trust] property due to alleged deficiencies in service of process. He further avers that the court was clearly erroneous in finding that he had actual intent to hinder, delay or defraud the FDIC, and contends that the court improperly allowed attorney fees to the FDIC. Because we agree with Proia that he was improperly assessed attorney fees, we modify the judgment to exclude them and affirm the judgment as modified.

In 1987, Michael Carr and Samuel Proia, as trustees for the 354 Waverly Trust, issued a promissory note to New England Financial Services Corporation, for whom the FDIC has since been substituted as plaintiff. In his individual capacity, Proia guaranteed the note. The Trust defaulted in its obligation to the payee of the note in June of 1989.

Proia was subsequently divorced from his wife. Pursuant to the terms of the divorce judgment, Proia's ex-wife conveyed to him her interest in a jointly owned property known as Westport Island. In December of 1989, Proia transferred title to Westport Island to the Trust. He became the sole trustee of the Trust, as well as a fifty percent beneficiary of it. The beneficiaries of the other fifty percent are Proia's children.

The FDIC commenced the instant action in the Superior Court on a complaint to collect a debt and to set aside a fraudulent conveyance with an attached motion for attachment and trustee process. The court granted the motion for attachment and trustee process and subsequently granted a summary judgment to the plaintiff on the debt in the amount of $200,938.33 plus interest from August 13, 1990. The judgment also awarded attorney fees of $10,142.37. After a non-jury trial, judgment was entered for the FDIC. On appeal, Proia challenges the award of attorney fees and the determination that Proia fraudulently transferred Westport Island.

## Service of Process

■ Contrary to Proia's contention, it was not necessary to serve him as a trustee, pursuant to M.R.Civ.P. 4(d)(13), in order to effectuate the attachment order imposing a lien on real property held in the name of the Trust. Service of process pursuant to M.R.Civ.P. 4(f), which Proia conceded was properly completed, was sufficient to effectuate such an order.

The Maine Uniform Fraudulent Transfers Act, 14 M.R.S.A. §§ 3571–3582 (Supp.1994), expressly authorizes prejudgment attachment. It provides:

**1. Action for relief.** In any action for relief against a transfer ... under this Act, a creditor ... may obtain:

.        .        .        .        .

**B.** An attachment ... *against the asset transferred* ... in accordance with the procedure prescribed by law....

14 M.R.S.A. § 3578(1)(B) (emphasis added). The foregoing remedy is contingent on compliance with the Rules of Civil Procedure. 14 M.R.S.A. § 3578 comment (Supp.1994).

The rules require that the motion and affidavit be served on the defendant in accordance with Rule 4. M.R.Civ.P. 4A(c). In the instant case, Proia was served as an individual pursuant to M.R.Civ.P. 4(f). Proia transferred Westport Island to the Trust, and a claim challenging the transfer as fraudulent has been brought against him as an individual. Since the Act permits attachment of

---

1. The FDIC did not file a brief in this appeal.

fraudulently transferred property during the pendency of litigation concerning the property, the FDIC was permitted to serve Proia as an individual in order to attach the property. If we accepted Proia's contention that it was necessary to serve him as a trustee, we would be accepting the legitimacy of the very trust arrangement which the FDIC now challenges as fraudulent.

*Actual Intent to Hinder, Delay or Defraud*

█ The court did not err in finding that Proia had actual intent to hinder, delay or defraud the FDIC's predecessor in interest. Whether a conveyance is fraudulent is a question of fact. *Watson v. Watson,* 221 Conn. 698, 607 A.2d 383, 388 (1992). We will not overturn the trial court's findings unless they are clearly erroneous. *Morin Bldg. Products Co. v. Atlantic Design & Constr. Co.,* 615 A.2d 239, 241 (Me.1992). A factual finding is clearly erroneous only if there is no competent evidence in the record in support of it. *Dupuis v. Pierre's School of Beauty Culture, Inc.,* 642 A.2d 854, 855 (Me.1994).

A transfer by a debtor is fraudulent if it is made with "actual intent to hinder, delay or defraud any creditor of the debtor . . . ." 14 M.R.S.A. § 3575(1)(A). The following factors may be considered in analyzing the fraud issue:

A. The transfer or obligation was to an insider;

B. The debtor retained possession or control of the property transferred after the transfer;

C. The transfer or obligation was disclosed or concealed;

D. Before the transfer was made or obligation was incurred, the debtor sued or threatened with suit;

E. The transfer was of substantially all the debtor's assets;

F. The debtor absconded;

G. The debtor removed or concealed assets;

H. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

I. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

J. The transfer occurred shortly before or shortly after a substantial debt was incurred; and

K. The debtor transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor.

14 M.R.S.A. § 3575(2)(A)–(K). The court may consider factors other than the foregoing, and any combination of factors may support a determination of actual intent. *Id.* comment. *See also* U.F.T.A. § 4 comment (1984) (stating that in considering the listed factors a court should evaluate all relevant circumstances and take into account all indicia negativing as well as suggesting fraud).

The court found that the FDIC established by clear and convincing evidence[2] that the transfer of property was to an insider, Proia retained possession of the property in question, he was threatened with suit prior to the transfer, the transfer was for less than the reasonably equivalent value of the asset, and the transfer occurred shortly after a substantial debt was incurred. These findings of fact are supported by competent evidence in the record.

█ For purposes of the Act, an "insider" is defined as, *inter alia,* an individual who is a relative of the debtor. 14 M.R.S.A. § 3572(7)(A)(1). "Relative" is defined as an individual within the third degree of consanguinity as determined by the common law. 14 M.R.S.A. § 3572(11). Proia transferred his interest in the Westport Island property to the Trust, of which he was the sole trustee and a fifty percent beneficiary. His children were the beneficiaries of the remaining fifty percent of the trust. Proia clearly transferred the property to insiders. *See Clark v.*

2. The court applied the correct standard of proof. Prior to the Act, Maine law required evidence of fraud in conveyance to be proven by clear and convincing evidence. *Gatchell v. Gatchell,* 127 Me. 328, 330 143 A. 169 (1928). *See*

*also Butler v. Poulin,* 500 A.2d 257, 260 n. 5 (Me.1985) (clear and convincing evidence required to establish fraud). The Act does not change this requirement.

*Bank of Bentonville,* 308 Ark. 241, 824 S.W.2d 358, 362–63 (1992) (conveyance by debtor of property to son as trustee of trust to which debtor, as beneficiary, was entitled to whatever amounts he deemed convenient found fraudulent).

Proia retained possession of the property in question after the transfer. He testified that he spends "quite a bit of time" on the island. Although he does not live there full-time, he is gradually moving toward doing so. He intends the island to be his primary residence in the future.

The record shows that Michael Carr, co-trustee of the 354 Waverly Trust, received default notices on the loan prior to Proia's transfer of Westport Island. These notices demanded payment within fifteen days and threatened foreclosure if such payment were not received. The court simply did not believe Proia's claim that he was unaware of the default and threatened foreclosure. That credibility determination was the court's to make. *Bailey v. Sears, Roebuck & Co.,* 651 A.2d 840, 843 (Me.1994).

There was no consideration for the transfer of Westport Island to the Trust. Proia had purchased the property in 1984 for $60,-000. He mortgaged the property in March of 1990 to secure a debt for $125,000. The property clearly had value. *See Citizens State Bank of Hayfield v. Leth,* 450 N.W.2d 923, 926 (Minn.Ct.App.1990) (debtor's transfer of land to a revocable family trust made without receipt of reasonably equivalent value when sold for ½ value).

Finally, Proia and his first wife were divorced approximately two months prior to the establishment of the Westport Island Trust. The divorce judgment required Proia to pay his ex-wife $250,000. Therefore, Proia had incurred a substantial debt shortly before the transfer of the island to the Trust. *See Commerce Bank of Lebanon v. Halladale A Corp.,* 618 S.W.2d 288, 292 (Mo.App.

1981) (finding that incurrence of substantial debts to other creditors during time period immediately proceeding or following challenged transfer was one indicia of fraud).

### Attorney Fees

Courts can award attorney fees in cases when the parties have so agreed, when authorized by statute or for certain tortious conduct. *Chadwick–BaRoss, Inc. v. T. Buck Constr., Inc.,* 627 A.2d 532, 536 (Me.1993). No general right to such fees exists. *Bank of Maine, N.A. v. Weisberger,* 477 A.2d 741, 744–45 (Me.1984).

The note signed by Proia as a trustee of the 354 Waverly Trust provides that each party agrees to pay reasonable attorney fees. The guaranty, which Proia signed as an individual, provides only that he "unconditionally guarantees ... the prompt payment of all amounts now owing or which may hereafter be owing to said Bank from the Borrower [the Trust] on account of such loans ... or otherwise ... up to the maximum amount of two hundred thousand and no/100 ($200,000) dollars...." His exposure to liability, therefore, is limited to $200,000. Because the balance due on the note, alone, exceeded Proia's contractual obligation, the court should not have awarded attorney fees to the FDIC.

The entry is:

Judgment modified to eliminate the award of attorney fees and, as modified, affirmed.

All concurring.