1998 ME 160

**Adrien MORIN et al.**

v.

**Dana M. DUBOIS et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Dec. 23, 1997.
Decided June 25, 1998.

William J. Smith, Van Buren, for Appellants.

E. Allen Hunter, Solman & Hunter, Caribou, for Appellees.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

DANA, Justice.

[¶ 1] Adrien Morin appeals from the judgment entered in the Superior Court (Aroostook County, *Archibald, A.R.J.*) denying his request for relief pursuant to the Maine Uniform Fraudulent Transfer Act, 14 M.R.S.A. §§ 3571–3582 (Supp.1997). On appeal he contends that the court erred in finding that Paul Dubois, Dana's father, did not make certain transfers with the actual intent to hinder, delay, or defraud his creditors and that the transfers were not fraudulent pursuant to 14 M.R.S.A. § 3575(1)(B)(2) and § 3576(1). We agree and vacate the judgment.

[¶ 2] The following facts are undisputed. Between 1982 and 1990 Paul Dubois, an accountant and owner of a hearing aid business, accepted hundreds of thousands of dollars from his clients after falsely representing that he would invest the money for them. In 1989, after learning that he had serious health problems, he began to divest himself of his assets. In September of that year he conveyed four parcels of real estate to his son, Dana, in exchange for Dana's promise to pay to Beulah Dubois, Paul's wife and Dana's mother, twelve percent of the gross income of the accounting and hearing aid businesses that Paul, not Dana, then owned. Fifteen months later for the same consideration Paul conveyed to Dana the two businesses. Paul and Dana signed documents that valued the real estate and the businesses at $230,000. Paul admitted that these transfers left him with no assets. Within a few months Paul filed for personal bankruptcy listing liabilities exceeding $882,-000 and was indicted for multiple counts of theft by deception. Paul entered a guilty plea but died before sentencing. Morin and ten others,[1] victims of Paul's investment scheme, filed a complaint against Dana and Richard Dubois[2] in 1992 requesting that the court set aside and void the transfers to Dana and award damages pursuant to 14 M.R.S.A. § 3578 (Supp.1997).[3] After a nonjury trial the court found that the conveyances were not made with the actual intent to hinder, delay, or defraud Paul's creditors and ruled in the Dubois' favor. This appeal followed.

[¶ 3] One who challenges the validity of a transfer must prove that the conveyance was fraudulent by clear and convincing evidence. *Federal Deposit Ins. Corp. v. Proia,* 663 A.2d 1252, 1254 n. 2 (Me.1995). Whether a conveyance is fraudulent under the Act is a question of fact, and we will not overturn the trial court's findings of fact unless they are clearly erroneous. *Id.* at 1254. We will not overturn a finding for the

---

1. The plaintiffs in this matter are Adrien, Fernand, Edgar and Joseph Morin; Michael Abbott; Richard Paradis; and Raymond Freeman. At the trial the plaintiffs also included Riola, and Marie Rose Morin; Claudette Freeman; and Diane Paradis.

2. Richard, Dana's brother, was a codefendant at the trial, but Morin does not challenge the trial court's determination that Richard was not a "transferee" within the meaning of the Act.

3. 14 M.R.S.A. § 3578 provides in pertinent part:
 1. **Action for relief.** In any action for relief against a transfer or obligation under this Act, a creditor, subject to the limitations provided in section 3579, may obtain:
 A. Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

B. An attachment, trustee process or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by law; or
C. Subject to applicable principles of equity and in accordance with applicable civil rules of procedure:
(1) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
(2) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee;
(3) Damages in an amount not to exceed double the value of the property transferred or concealed; or
(4) Any other relief the circumstances may require.

defendant unless the evidence also compels a finding in the plaintiff's favor. Findings are clearly erroneous when no competent evidence supporting the finding exists in the record; the factfinder clearly misapprehended the meaning of the evidence; or the force and effect of the evidence, taken as a whole, rationally persuades us to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case. *Glidden v. Belden,* 684 A.2d 1306, 1316–17 (Me.1996).

[¶ 4] A transfer by a debtor is fraudulent if it is made with "actual intent to hinder, delay or defraud any creditor of the debtor...." 14 M.R.S.A. § 3575(1)(A) (Supp. 1997). Although the court failed to clearly articulate its consideration of the factors that are used to analyze the fraud issue, we are convinced that it clearly misapprehended the meaning of the evidence and that the evidence compels a finding for the plaintiffs. Paul admitted by deposition that his motivation for putting "all my property in my son's name ... (was) for the simple reason that I ... did not want to have anything in case of high medical bills." Although the court concluded that Paul's transfers were motivated by the desire to provide for his wife and mother, it is often the case that a transfer considered fraudulent pursuant to the Act has the underlying purpose of retaining resources to provide for oneself or one's family rather than have those resources available to creditors.

[¶ 5] Precisely because a transferor's stated reasons for transferring assets will rarely include an explicit admission of intent to defraud creditors, the statute provides a comprehensive, although not exclusive, list of factors to be examined when considering whether a transfer was made with the actual intent to hinder, delay, or defraud a creditor. Pursuant to the statute, a factfinder is instructed to consider the following factors when determining whether a conveyance is fraudulent within the meaning of 14 M.R.S.A. § 3575(1)(A):

A. The transfer or obligation was to an insider;

B. The debtor retained possession or control of the property transferred after the transfer;

C. The transfer or obligation was disclosed or concealed;

D. Before the transfer was made or obligation was incurred, the debtor sued or [was] threatened with suit;

E. The transfer was of substantially all the debtor's assets;

F. The debtor absconded;

G. The debtor removed or concealed assets;

H. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

I. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

J. The transfer occurred shortly before or shortly after a substantial debt was incurred; and

K. The debtor transferred the essential assets of the business to a lienor who had transferred the assets to an insider to the debtor.

14 M.R.S.A. § 3575(2)(A)–(K) (Supp.1997). The number of these factors present given the undisputed facts in this case compels the inexorable conclusion that the conveyances at issue were fraudulent within the meaning of the Act.

[¶ 6] Paul's conveyances to Dana were transfers to an insider, *see Hatheway v. Hanson,* 230 Iowa 386, 297 N.W. 824 (1941) (transfer from a parent to a child requires a critical examination of the surrounding circumstances); Paul admitted that he had no assets after he transferred the properties to Dana; Paul received grossly inadequate consideration for the transfers—indeed, the initial transfers of the four parcels of real estate involved *no* consideration given that Paul retained ownership of the businesses from which the consideration was to be paid, *see Michaud v. Michaud,* 129 Me. 282, 151 A. 559 (Me.1930) (conveyance of a debtor's entire property in consideration of his own future support or that of members of his family is prima facie voidable as a fraudulent

transfer); Paul filed for bankruptcy in 1991, demonstrating his insolvency shortly after the transfers; and the transfers occurred shortly before Paul expected to incur substantial medical expenses.

[¶ 7] There is no suggestion in the court's judgment that it considered the factors relevant to determining when a transfer was made with the actual intent to hinder, delay, or defraud creditors. In light of the presence of so many of the factors indicating an actual intent on the part of Paul to avoid his creditors, the court's finding that the plaintiffs had not established by clear and convincing evidence the elements of a fraudulent transfer pursuant to 14 M.R.S.A. § 3575(1)(A) is clearly erroneous and cannot stand. If one steals in order to provide for one's family, it is no less a theft. In the same way, if one transfers assets while insolvent in order to provide for one's family, it is no less a fraudulent transfer.

[¶ 8] Furthermore, the court did not address the plaintiffs' claim that Paul also violated section 3575(1)(B)(2) despite the plaintiffs' incorporation of the section's language in their complaint, their argument for its application in their post-trial brief, and their further reference to the section in their motion to amend the findings. Section 3575(1)(B)(2) provides in pertinent part:

1. **Fraudulent transfer.** A transfer made ... by a debtor is fraudulent as to a creditor ... if the debtor made the transfer ...

B. Without receiving a reasonably equivalent value in exchange for the transfer ... and the debtor:

(2) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as the debts became due.

At a time when he owed others in excess of $800,000, Paul transferred assets he valued at $230,000 when he was anticipating additional medical bills as a result of his physical condition. Paul admitted that he transferred all his assets to his son because he was afraid that his final illness would consume all of his resources. Paul's conduct is a textbook ex-ample of a fraudulent conveyance in violation of section 3575(1)(B)(2).

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to enter a judgment for the plaintiffs and for a determination of the appropriate relief pursuant to 14 M.R.S.A. § 3578–79.

ROBERTS, Justice, with whom WATHEN, Chief Justice, joins, dissenting.

[¶ 9] I must respectfully dissent because the Court disregards the proper function of an appellate court and ignores much of the factual findings of the trial court. Although the record could support a finding that Paul transferred his interest in the property with the actual intent to hinder, delay, or defraud his creditors, there is competent evidence to support the court's contrary finding that he did not act with that intent.

I.

[¶ 10] Initially, I will elaborate on the various transfers at issue. In September 1989 Paul conveyed to Dana four parcels of real estate. One of the parcels—the Fort Kent property—had been previously owned by Paul's mother. The other three parcels were co-owned by Paul's wife, Beulah. The consideration on the warranty deeds for those transfers was nominal. The plaintiffs, however, submitted transfer tax forms that listed the consideration paid on one of the parcels—the camp—at $10,000 and on another parcel—the office building—at $70,000. The plaintiffs failed to provide any evidence regarding the value of the Fort Kent property or the fourth parcel of land—the residential property. There is evidence that both the office building and the residential property were encumbered by a mortgage and that both properties have been subsequently subject to a foreclosure sale. There is no evidence as to the amount due on those mortgages at the time the parcels were transferred to Dana.

[¶ 11] In December 1990 Paul transferred two businesses to his son. The bill of sale stated the value of the businesses as $150,000. At trial Dana, however, testified that

the assets of both businesses were approximately $6,000 to $7,500 at the time of the transfer.

[¶ 12] To support their assertions that the transfers depleted Paul of his assets, the plaintiffs submitted a copy of his bankruptcy petition completed in May 1991, nearly two years after Paul transferred the parcels of real estate to Dana. Paul's deposition, in which he stated that he did not have any assets after he transferred the real estate to Dana and that he put the property in Dana's name "for the simple reason that ... I did not want to have anything in case of high medical bills,"[4] was also submitted at trial.

## II.

[¶ 13] We have repeatedly stated that "the function of an appellate court is not to review a cold transcript and draw its own factual inferences...." *Lewisohn v. State,* 433 A.2d 351, 354 (Me.1981). Rather, we review the record to determine whether there is any evidence to support the trial court's findings. *VanVoorhees v. Dodge,* 679 A.2d 1077, 1080 (Me.1996). These findings are conclusive on us even if there is evidence in the record that could have supported a contrary determination. *Crowley v. Dubuc,* 430 A.2d 549, 551 (Me.1981).

[¶ 14] Despite these principles, the Court declares "that [the trial court] clearly misapprehended the meaning of the evidence and that the evidence compels a finding for the plaintiffs." The Court ignores, for example, the trial court's finding that the Fort Kent property was never a viable asset of Paul and that his father transferred the property to Paul to hold for his mother. The Court also ignores the trial court's findings that Beulah co-owned the other three parcels of property.

[¶ 15] The Court further disregards the superior position of the trial court to assess the credibility of the various witnesses and nontestimonial evidence. *See, e.g., Crowley v. Dubuc,* 430 A.2d at 552. Contrary to the Court's assertions, the trial court was not compelled to believe that the $150,000 listed on the bill of sale reflected the true value of the businesses. Nor was the court compelled to believe that the amounts listed as consideration on the tax forms were the actual values of the real estate.

[¶ 16] The failure on the part of the plaintiffs to bring forth credible evidence of the value of the property made it impossible for the court to discern whether the transfers were even voidable pursuant to the Uniform Fraudulent Transfer Act, 14 M.R.S.A. §§ 3571–3582 (Supp.1997). Section 3572(12) defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with an *asset* or an interest in an *asset....*" (Emphasis added). Excluded from the definition of the term "asset" is "[p]roperty to the extent that it is encumbered by a valid lien." 14 M.R.S.A. § 3572(2)(A). Both the office building and the residential property were encumbered by a lien at the time of the transfer. The plaintiffs failed to provide the court with any evidence as to the value of the residential property or the amount of the mortgages encumbering both pieces of property. The court was therefore unable to determine whether those parcels of real estate were even "assets" within the meaning of the Uniform Fraudulent Transfer Act. Without this determination, Paul's conveyances to Dana of the property was not a "transfer," let alone a fraudulent transfer, within the meaning of the Act.

[¶ 17] The failure on the part of the plaintiffs to provide the court with sufficient evidence as to the value of the property transferred also resulted in an inability on the part of the court to assess damages. 14 M.R.S.A. § 3579(2) provides that a creditor "may recover judgment for the value of the asset transferred ... or the amount necessary to satisfy the creditor's claim, *whichever is less.*" (Emphasis added). Only the camp is still in the possession of Dana. The residential property and the office building have been subject to a foreclosure sale, and the Fort Kent property has been returned to Paul's mother who is not a party to this

---

4. Both of these statements appear to be in direct contradiction to other evidence adduced at trial. In September 1989 Paul still owned his two businesses. Moreover, at the deposition he acknowledged that he had health insurance that would pay his medical bills.

litigation. Because these transfers cannot be avoided, evidence regarding the value of these parcels of real estate is essential. The plaintiffs, however, did not bring forth any evidence as to the value of the Fort Kent property or the residential property. Moreover, the evidence as to the value of the businesses, the camp, and the office building was subject to a credibility assessment by the court. Without credible evidence regarding the value of the property transferred, it was impossible for the court to draft a remedy.

[¶ 18] Finally, the Court states that the trial court failed to address the plaintiffs' claim that Paul violated section 3575(1)(B)(2). The Court's failure to address this issue is understandable in light of the plaintiffs' failure to argue for the application of section 3575(1)(B)(2). The trial instead focused on whether Paul transferred the property with the intent to hinder, delay, or defraud his creditors and whether Dana actively partici-

pated in the scheme. The only mention of this section was in the post-trial brief of the plaintiffs' counsel. Moreover, rather than explain how the section applied to the facts of this case, he made a one-sentence, perfunctory reference to the section. Hence, whether the plaintiffs have adequately preserved the applicability of section 3575(1)(B)(2) is debatable.

[¶ 19] For these reasons, I cannot conclude that the evidence was such that the court was compelled to believe that the transfers were fraudulent and therefore I would affirm the judgment of the trial court.