**George U. CARNEAL, Plaintiff**

v.

**Frederick L. LEIGHTON and Ann M. Leighton, Defendants**

**No. CIV. 02–114–P–C.**

United States District Court, D. Maine.

Dec. 23, 2002.

---

David G. Webbert, Esq., Matthew Sherburne Keegan, Esq., Johnson & Webbert, LLP, Augusta, ME, for George U Carneal, plaintiff.

Robert J. Keach, Esq., Bernstein, Shur, Sawyer, & Nelson, Portland, ME, for Frederick L. Leighton, Ann M. Leighton, defendants.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' MOTIONS TO STRIKE

GENE CARTER, District Judge.

Now before the Court is Plaintiff's Motion for Partial Summary Judgment (Docket Item No. 9). This action arises out of Plaintiff George Carneal's allegations that Defendant Frederick Leighton has made several transfers to his wife, Defendant Ann Leighton, that are fraudulent as to Plaintiff, a creditor. Complaint ¶ 1 (Docket Item No. 1). Plaintiff asks for summary judgment on two of the alleged fraudulent transfer counts pled in the Complaint. First, Plaintiff claims he is entitled to judgment on Count I, the October 16, 2001, transfer by Defendant Frederick Leighton of his 25% limited partnership interest in Center City Plaza Associates (CCPA) to his wife, Ann Leighton. Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's MPSJ") at 3 (Docket Item No. 9). Second, Plaintiff claims he should be granted judgment on Count III, the 1997 transfer from Frederick Leighton to Ann Leighton of his ownership interest in a John Hancock mutual fund with a value of $5,000 and the transfers from Frederick Leighton to Ann Leighton of the periodic cash distributions received from his CCPA interest.[1] *Id.* at 11, 14. For the reasons set forth below, the Court will deny in part and grant in part Plaintiff's Motion for Partial Summary Judgment.

Also pending are Defendants' Motion to Strike Paragraph 7 of the Declaration of Harold C. Pachios and the Supplemental Declaration of Harold C. Pachios (Docket Item No. 17) and Defendants' Motion to Strike the Declaration of Nancy Fannon (Docket Item No. 18). Because the Court finds Defendants' Motion to Strike the

---

1. Apart from the transfer of the mutual fund, the alleged transfer of the periodic cash distributions is the only "other transfer" argued as fraudulent by Plaintiff on Count III in his memoranda in support of his Motion for Partial Summary Judgment. The Court understands the alleged fraudulent transfer of the periodic cash distributions received from the CCPA partnership interest to be pled in ¶ 43 of the Complaint, a catch-all paragraph under Count III alleging that "Fred Leighton may have made other transfers of assets and property to Ann Leighton between June 1, 1996, and the present that were fraudulent pursuant to 14 M.R.S.A. § 3575 & 3576."

Declaration of Nancy Fannon to be untimely, the Court will deny this Motion to Strike.[2] As to Defendants' Motion to Strike Paragraph 7 of the Declaration of Harold C. Pachios and the Supplemental Declaration of Harold C. Pachios, the Court finds that it is not necessary to resolve these issues for purposes of this summary judgment motion, and will, therefore, reserve its ruling.

## I. Facts

In August of 1995, Plaintiff George Carneal filed a cross-claim against Defendant Frederick Leighton in the Maine Superior Court for contribution on the nearly $900,000 he had paid to satisfy their joint and several debt, incurred as a result of the two men's involvement in a cable business in the late 1980s and early 1990s. Plaintiff's Statement of Material Facts ¶ 3 ("Plaintiff's SMF") (Docket Item No. 10). On June 8, 2001, a judgment was entered in favor of Plaintiff on his contribution claim in the amount of $226,383.37 plus allowable interest and costs. *Id.* ¶ 1. On October 10, 2001, a Writ of Execution was issued in the amount of $266,608.90. *Id.* ¶ 2. To this date, Defendant Frederick Leighton has not made any payments on the June 8, 2001, judgment. *Id.* ¶ 52; Defendants' Objection to Plaintiff's Statement of Material Facts ("Defendants' OPSMF") ¶ 52 (Docket Item No. 19).[3]

Since the filing of Plaintiff's contribution claim against Defendant in 1995, Defendant Frederick Leighton has made several transfers to his wife, Defendant Ann Leighton, that Plaintiff alleges to be fraudulent. Sometime after September 23, 1997, Defendant Frederick Leighton transferred his entire ownership interest in his John Hancock mutual fund to Defendant Ann Leighton for no monetary consideration or value at a time when the fund had a value of $5,000. Plaintiff's SMF ¶ 34. Between 1996 and 2001, Defendant Frederick Leighton received the following cash distributions from his partnership interest in CCPA: $12,607 in 1996, $20,292 in 1998, $18,315 in 1999, $24,265 in 2000, and $25,000 in 2001. *Id.* ¶ 37. Defendant Frederick Leighton deposited all of these cash distributions from CCPA into Defendant Ann Leighton's bank account. *Id.* ¶ 40. Finally, on October 16, 2001, Defendant Frederick Leighton transferred his 25% limited partnership interest in CCPA to Defendant Ann Leighton. Plaintiff's SMF ¶ 20.

Defendant Frederick Leighton has been insolvent from January 1, 1996, to the present. Plaintiff's SMF ¶ 58. During this time, all payments for household expenses and the support of the children have been made from Defendant Ann Leighton's bank account. Defendants' Separate Statement of Material Facts ("Defendants' SSMF") (Docket Item No. 19) ¶ 14. During this time as well, Defendant Ann Leighton paid her husband's legal fees of approximately $20,000 and his state sales tax liability of approximately $30,000. *Id.* ¶ 13. Defendant Ann Leighton has also paid for Defendant Frederick Leighton's credit card debts. Mrs. Leighton paid the bills arising out of his use of an American Express credit card under her account, totaling several thousand dol-

---

**2.** Defendant filed this motion challenging Plaintiff's expert witness, Nancy Fannon, on November 19, 2002; the discovery deadline for the filing of all *Daubert* and *Kumho* motions challenging expert witnesses was October 29, 2002. Plaintiff's Objection to Scheduling Order and Incorporated Proposed Discovery Plan, (Docket Item No. 4) (granted, July 1, 2002). Therefore, Defendant's motion is untimely and will be denied.

**3.** The record does not show that any successful levies have been made on the execution against the assets of the Defendants.

lars a month. Plaintiff's SMF ¶ 35; Defendants' OPSMF ¶ 35. In addition, in 1998 she paid Defendant Frederick Leighton's outstanding MBNA credit card debt of $17,000. Plaintiff's SMF ¶ 55. Defendant has been unable to pay any of his share of a $100,000–$115,000 debt to his father-in-law, Plaintiff's SMF ¶ 53, and, as indicated above, has made no payment on the judgment obtained by Plaintiff on June 8, 2001.

## II. The Motion for Partial Summary Judgment

### A. Summary Judgment Standard

■ Summary judgment is appropriate only when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if, based on the record evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). " 'Material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995) (citations omitted). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Nicolo v. Philip Morris, Inc.,* 201 F.3d 29, 33 (1st Cir.2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.,* 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e).

### B. Discussion

■ Plaintiff alleges that Defendant Frederick Leighton made several transfers to his wife, Defendant Ann Leighton, that are fraudulent. Plaintiff invokes section 3576 of Maine's Uniform Fraudulent Transfer Act (MUFTA) in asserting his claim against Defendants. Under section 3576, there are two ways that a transfer may be fraudulent as to a present creditor. Section 3576(1) concerns transfers without receipt of reasonably equivalent value:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Section 3576(2) concerns transfers to insiders:

A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

Under section 3576, it is not necessary to prove intent to defraud in order to be found liable: "intent, actual or implied, is irrelevant." 14 M.R.S.A. § 3576 Maine cmt. 1.

**i. Count III—Defendant Frederick Leighton's transfer of his ownership interest in the $5,000 John Hancock Mutual Fund to Defendant Ann Leighton and the transfers of the CCPA cash distributions to Defendant Ann Leighton**

Sometime after September 23, 1997, Defendant Frederick Leighton transferred his entire ownership interest in his John Hancock mutual fund to Defendant Ann Leighton for no monetary consideration or value at a time when the fund had a value of $5,000. Plaintiff's SMF ¶ 34. Plaintiff asserts that this transfer was made for no consideration and was, therefore, fraudulent under section 3576(1) of MUFTA. Defendants admit that no monetary consideration or value was exchanged as a result of this transfer, but contend that the proceeds were used to pay for household expenses and the support of the children. Defendants' OPSMF ¶ 34. Under section 3576(1), to prove a fraudulent transfer it must be shown that (1) the creditor's claim arose before the transfer; (2) the debtor did not receive "reasonably equivalent value" for the transfer; and (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer. Plaintiff's claim arose at the latest in August of 1995 when he filed his contribution suit against Defendant Frederick · Leighton for the money he had paid on the promissory notes that both had signed for their cable business.[4] Plaintiff's SMF ¶ 3. Defendant Frederick Leighton transferred the mutual fund interest to his wife in 1997. *Id.* ¶ 34. Finally, Defendant Frederick Leighton was insolvent at the time of the mutual fund transfer. He admitted that he has been insolvent since January 1, 1996. Plaintiff's SMF ¶ 58. Finally,

Plaintiff must show that Frederick Leighton did not receive reasonably equivalent value.

In support of their argument that Defendant Frederick Leighton received reasonably equivalent value in exchange for the transfer of the mutual fund, Defendants cite a Maryland case. *See Pearce v. Micka,* 62 Md.App. 265, 489 A.2d 48, 54–55 (1985). Although *Pearce* does hold that a transfer by a husband to his wife to provide for household expenses and the support of children is not a fraudulent transfer, Maine law is not in accord with this Maryland precedent.

In *Morin v. Dubois,* 1998 ME 160, ¶ 2, 713 A.2d 956, 957 (1998), a father transferred to his son four parcels of real estate and two businesses that he owned, a total value of $230,000, in exchange for the son's promise to provide for his mother (the father's wife). The father made this transfer upon learning that he had serious health problems and after eight years of accepting money from his clients after falsely representing that he would invest the money for them. *Id.* The transfer left him with no assets, and he subsequently filed for bankruptcy. *Id.* After the father pled guilty to multiple counts of theft by deception, several of his victims filed a complaint against his son, requesting that the court set aside and void the above-mentioned transfers to the son and award damages pursuant to the Maine Fraudulent Transfer Act.[5] *Id.* The Law Court found that although the lower court had concluded that the defendant's transfers

> were motivated by the desire to provide for his wife and mother, it is often the case that a transfer considered fraudulent pursuant to the [Uniform Fraudu-

---

4. 14 M.R.S.A § 3572(3) defines "claim" as "a right to payment, whether or not the right is reduced to judgment . . . ."

5. As the father died before sentencing, the suit was filed only against his son.

lent Transfer] Act has the underlying purpose of retaining resources to provide for oneself or one's family rather than have those resources available to creditors.

*Id.* 1998 ME 160, ¶ 4, 713 A.2d 956. In *Morin,* the court held that the transfer of assets in exchange for the son's promise to pay the father's wife and his own mother certain income was "grossly inadequate consideration for the transfers." *Morin,* 1998 ME 160, ¶ 6, 713 A.2d 956. The Law Court could not have been any clearer when it stated, "[i]f one steals in order to provide for one's family, it is no less a theft. In the same way, if one transfers assets while insolvent in order to provide for one's family, it is no less a fraudulent transfer." *Morin,* 1998 ME 160, ¶ 7, 713 A.2d 956.

Because Mr. and Mrs. Leighton are married, the payment of the household expenses and support of the children are as much Ann Leighton's responsibility as Frederick Leighton's. This is not a situation where the Leightons are divorced and there is a legally cognizable child support obligation. Ann Leighton's payments for the household expenses and support of the children does not constitute reasonably equivalent value for the transfer of the mutual funds.

Defendants' attempts to distinguish this case are unavailing. Defendants seize on the language in *Morin* that states "[w]hether a conveyance is fraudulent under the Act is a question of fact" and insist that, for this reason, summary judgment should be denied on this point. Defendants' Surreply in Opposition to Plaintiff's Motion for Summary Judgment (Docket Item No. 32) at 3 (*quoting Morin,* 1998 ME 160, ¶ 3, 713 A.2d 956). While it is true that whether a conveyance is fraudu-

lent is a question of fact, on the particular issue of the transfer of the mutual fund, it is clear, based upon the memoranda, pleadings, and affidavits, and viewing this evidence in the light most favorable to the nonmoving party, that there is no *genuine* issue of *material* fact in this case. The undisputed facts of this case establish liability under this 14 M.R.S.A. § 3576(1); Plaintiff is entitled to summary judgment on this claim as a matter of law.

For the same reasons, Plaintiff is entitled to summary judgment on his claim that under section 3576(1), the partnership distributions that he received were fraudulently transferred by Defendant Frederick Leighton to his wife. These distributions were transferred beginning in 1996 until 2001 when the partnership was transferred. Plaintiff's SMF ¶ 40. As Plaintiff's 1995 claim arose before these transfers, Plaintiff's SMF ¶ 3, and after Defendant Frederick Leighton became insolvent, *id.* ¶ 58, two of the requisites of section 3576(1) are met. Finally, as Defendants are claiming the same consideration for the transfer of the distributions as for the transfer of the mutual fund—payment by Defendant Ann Leighton of household expenses and child support—the last requirement is satisfied because, as discussed above, Ann Leighton's payment of household expenses and child support does not constitute reasonably equivalent value. The Court will, therefore, grant summary judgment on Count III, in the amount of $105,479.[6]

**ii. Count I—Defendant Frederick Leighton's transfer of his 25% limited partnership interest to Defendant Ann Leighton.**

On October 16, 2001, Defendant Frederick Leighton transferred his 25% limited

---

6. This number reflects the total of the $5,000 mutual fund plus the $100,479 total cash dis-

tributions made between 1996 and 2001, as per Plaintiff's SMF ¶ 37.

partnership interest in CCPA to Defendant Ann Leighton. Plaintiff's SMF ¶ 20. Plaintiff contends that this transfer was also fraudulent under MUFTA's section 3576. Defendants respond that the transfer was lawful, arguing that several pieces of consideration were given by Defendant Ann Leighton as reasonably equivalent value in exchange for the partnership interest. First, Defendants claim that in consideration of the transfer, Ann Leighton agreed to take over for Frederick Leighton on his personal guarantee of the CCPA debt, and the bank agreed to release Mr. Leighton on that debt. Defendants' OPMPSJ at 4–5, 11; Defendants' SSMF ¶ 12. Second, Defendants point to the payment by Defendant Ann Leighton of a state sales tax liability owed by Frederick of approximately $29,500, and of his legal fees to the extent of $20,000. Defendants' OPMPSJ at 5, 11–12; Defendants' SSMF ¶ 13. Third, Defendants claim that Ann secured Frederick's release from an obligation owed by Frederick to Ann's father in excess of $100,000, "in exchange for which Ann's inheritance will be surcharged by over $100,000." Defendants' OPMPSJ at 5, 12. Finally, Defendants claim that in exchange for the partnership interest, Defendant Ann Leighton paid all household expenses, including Defendant Frederick Leighton's credit card debts. *Id.* at 5, 12. The Court will discuss each of the alleged items of consideration in turn.

### a. Defendant Ann Leighton's assumption of Defendant Frederick Leighton's guaranty liability

■ The first alleged item of consideration is the assumption by Defendant Ann Leighton of Defendant Frederick Leighton's personal guaranty of his share of the partnership's bank debt and the bank's release of Defendant Frederick Leighton

from this liability. The Court understands Defendants to argue that Frederick Leighton, as a partner in the CCPA, had been required to personally guarantee a portion of the partnership bank debt. There is a factual dispute in the record as to whether such an assumption of Defendant Frederick Leighton's obligation to guarantee the bank debt took place. Defendants' SSMF ¶ 12; Plaintiff's Reply Statement of Material Facts (Docket Item No. 27) ¶ 12. Defendants do not cite to any documents regarding the existence of such a guarantee or the parameters of such a guarantee, nor do they cite any documents supporting the assertion that Defendant Ann Leighton in fact assumed this guarantee or that the bank in fact released Defendant Frederick Leighton from the guarantee. Given the factual dispute in the record that surrounds the issue of whether Defendant Ann Leighton assumed this guaranty liability and whether such an assumption is in fact "reasonably equivalent value" that would constitute adequate consideration the Court cannot find that the elements of section 3576(1) have been met.[7]

### b. Defendant Ann Leighton's payment of Defendant Frederick Leighton's sales tax liability and legal fees

■ Defendants contend that the payment by Defendant Ann Leighton of Defendant Frederick Leighton's legal fees and his sales tax liability were valid consideration for the partnership interest transfer in 2001. Section 3576(2) "permits the undoing of transfers by insolvents, even if made for fair consideration, not to hinder creditors, and without fraudulent intent, if the transfer was preferential." *Federal Refinance Co., Inc. v. Klock*, 229 F.Supp.2d 26, 27 (D.Mass.2002) (discussing analogous provision of Massachusetts Uni-

---

**7.** Plaintiff does not argue that this transfer satisfies the provisions of section 3576(2).

Therefore, the Court will not address the transfer under this subsection.

form Fraudulent Transfer Act). Under section 3576(2), four elements must be shown to establish that a transfer is fraudulent. First, the creditor's claim must have arisen before the transfer. Second, the transfer must be made to an insider for an antecedent debt. Third, the transferor must have been insolvent at the time of the transfer. And fourth, the insider must have "reasonable cause to believe that the debtor was insolvent." 14 M.R.S.A. § 3576(2). The Court finds that while the first three elements under this section are satisfied, there exists a dispute of fact as to the fourth.

First, Plaintiff's 1995 claim arose before the 2001 transfer. Plaintiff's SMF ¶ 3. Second, Ann Leighton, as Frederick Leighton's wife, is an insider. *See* 14 M.R.S.A. § 3572(7)(A)(1). Further, Defendant Ann Leighton paid her husband's personal sales tax liability in August of 2001, two months before the transfer. Plaintiff's SMF ¶ 57. It was also in August of 2001 that Defendant Ann Leighton set aside money from the refinancing of their home to pay for her husband's legal fees. *Id.* ¶ 32. As the transfer occurred two months later and there is no indication that at the time she paid his sales tax and legal fees Defendant Frederick Leighton agreed to transfer to her his partnership interest, any such subsequent transfer would be held to be made in satisfaction of the antecedent debt owed by Defendant Frederick Leighton to his wife, Defendant Ann Leighton, for her payment of his liabilities. The third element of the statute is also satisfied; as indicated above, Defendants have admitted that Defendant Frederick Leighton has been insolvent since January 1, 1996. *Id.* ¶ 58. The record,

however, is in dispute as to the last element under section 3576(2), that the insider must have "reasonable cause to believe that the debtor was insolvent." 14 M.R.S.A. § 3576(2). *See* Plaintiff's SMF ¶ 63; Defendants' OPSMF ¶ 63. Therefore, the Court cannot find that the elements of section 3576(2) have been satisfied.

 In addition, the Court cannot find that the elements of section 3576(1) have been satisfied. To satisfy this subsection, the Plaintiff's must prove that the debtor made the transfer "without receiving reasonably equivalent value for the transfer." 14 M.R.S.A. § 3576(1). As there is a significant dispute in the record as to the value of the partnership interest, *see* Plaintiff's SMF ¶ 27, Defendants' OPSMF ¶ 27, the Court cannot decide at this time what "reasonably equivalent value" for this interest would be and, therefore, cannot conclude at this time that the transfer of the partnership interest was fraudulent under section 3576(1).

### c. Defendant Frederick Leighton's release from the over $100,000 debt owed to his father-in-law

The Court finds that although Defendants have argued in their memoranda opposing Plaintiff's Motion for Partial Summary Judgment that part of the consideration conveyed by Defendant Ann Leighton was her agreement to a reduction in her inheritance to relieve Defendant Frederick Leighton of the over $100,000 debt he owed to her father, neither party's statement of material facts provides a factual predicate for this transaction.[8] Because the facts regarding this

---

8. The most that is said regarding this debt is in Plaintiff's Statement of Material Facts which provides "From approximately 1991 to 1997–98, Mr. Leighton was financially unable

to pay any of his share of the $100,000–$115,000 debt to his father-in-law." Plaintiff's SMF ¶ 53. Defendants admit this statement, but nowhere is anything said in the

transaction are not established in the record, the Court cannot resolve in this pending motion the issues presented. *See* Local Rule 56.

**d. Defendant Ann Leighton's payment of household expenses (including payment of Defendant Frederick Leighton's credit card debt) and child support**

██ Defendants finally claim as consideration for the partnership transfer Defendant Ann Leighton's payment of all household expenses and child support, including Defendant Frederick Leighton's credit card debts. For the reasons previously discussed above, *see supra* Section II(B)(i), the Court rejects the contention that the payment of household expenses and child support is valid consideration for the transfer. As to the payment of Defendant Frederick Leighton's credit card debts, the Court notes that Defendants admit that Defendant Ann Leighton is the owner of the American Express account and that Defendant Frederick Leighton simply holds a card for this account. Defendants' OPSMF ¶ 35. As it is her account, for which she presumably is also personally liable, her payment of those debts that he may have incurred through his authorized use of *her* credit card cannot serve as consideration.

██ Defendant Ann Leighton also paid, it is asserted, Defendant Frederick Leighton's $17,000 MBNA credit card debt in 1998; just like her payment of his sales tax liabilities and legal fees, this payment would meet the first three requirements for a fraudulent transfer under 3576(2): Plaintiff's 1995 claim arose before the 2001 transfer, and it was a transfer made to an insider for an antecedent debt by one who was insolvent. However, for the same rea-

sons discussed above, there is an issue of fact as to whether or not Defendant Ann Leighton knew her husband was insolvent and, therefore, all the elements have not been proven to show a fraudulent transfer under section 3576(2). Likewise, as discussed above, because there is a dispute as to the value of the partnership interest, the Court cannot decide at this time whether payment of this credit card debt would be reasonably equivalent value for the transfer of the partnership interest. There is a dispute in the record as to whether a fraudulent transfer is proven under section 3576(1).

In sum, several issues of fact remain which prevent the Court from granting summary judgment on Plaintiff's claim that the transfer of the partnership interest was fraudulent.

### III. Conclusion

For the foregoing reasons, the Court **ORDERS** that Plaintiff's Motion for Partial Summary Judgment be, and it is hereby, **GRANTED** on Count III of the Complaint and **DENIED** on Count I of the Complaint. The Court further **ORDERS** that Defendants' Motion to Strike the Declaration of Nancy Fannon be, and it is hereby, **DENIED**, and the Court **RESERVES** ruling on Defendants' Motion to Strike Paragraph 7 of the Declaration of Harold C. Pachios and the Supplemental Declaration of Harold C. Pachios.

---

Statement of Material Facts about Defendant Frederick Leighton being released from this debt or any corresponding reduction in Defendant Ann Leighton's inheritance.